UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

Urbana, Illinois

| | |
|---|---|
| In re:  MILORAD P. KETCHENS ) | |
| Debtor ) | Case No. 16-90211 |
| ) | |
| ) | Chapter 13 |
| ROSS E. McNEIL and ) | |
| LESLIE K. McNEIL, ) | |
| Plaintiffs ) | |
| ) | |
| v. ) | Adv. Proc. No. _____ |
| ) | |
| MILORAD P. KETCHENS, ) | |
| Defendant ) | |

COMPLAINT TO DETERMINE
THE DISCHARGEABILITY OF A DEBT UNDER 11 USC § 1328(a)(4)

Ross E. McNeil and Leslie K. McNeil, plaintiffs, by
Frederic M. Grosser, their attorney, as their Complaint to
Determine the Dischargeability of a Debt Under 11 USC
§ 1328(a)(4) state as follows:

Jurisdiction and Procedure

1.  This is an adversary proceeding pursuant to Rule 7001
of the Federal Rules of Bankruptcy Procedure and 11 USC §
1328(a)(4) of the Bankruptcy Code.

2.  This is a core proceeding under 28 USC § 157(b)(2)(I).

3.  This court has jurisdiction under 28 USC § 1334.

4.  Venue is proper in this court under 28 USC § 1409.

1

## Parties

5.  This adversary proceeding is brought in relation to In re Milorad P. Ketchens, debtor, No. 16-90211, Chapter 13, pending in the United States Bankruptcy Court, Central District of Illinois, Urbana Division.

6.  The plaintiffs are Ross E. McNeil and Leslie K. McNeil, 609 West Stoughton Street, Urbana, Illinois.  The plaintiffs are creditors in the underlying bankruptcy proceeding.

7.  The defendant is Milorad P. Ketchens, 613 West Stoughton Street, Urbana, Illinois.  The defendant is the debtor in the underlying bankruptcy proceeding.

## Deadline for Filing this Complaint

8.  This complaint is filed pursuant to 11 USC § 1328(a)(4).

9.  Plaintiffs believe that the timing of a complaint under § 1328(a)(4) is governed by Rule 4007(b) which applies to proceedings to determine dischargeability "other than under § 523(c) of the code."

10.  Rule 4007(b) states further that "A complaint other than under § 523(c) may be filed at any time."

11.  The next section of Rule 4007, Rule 4007(c), describes the time for filing complaints governed by § 523(c).

12.  § 523(c) allows a debtor to discharge claims under § 523(a)(2), § 523(a)(4) or § 523(a)(6) unless the creditor requests and is granted an exception to discharge for their claim.

13.  The Chapter 13 exceptions to discharge listed in § 1328(a)(2) include § 523(a)(2) and § 523(a)(4) but do not include § 523(a)(6).

14.  Chapter 13 separately and specifically describes and defines § 1328(a)(4) as an allowable exception to discharge.

15.  § 1328(a)(4) sets forth its own provision for non-dischargeability of a claim for willful or malicious conduct.

16.  § 523(a)(6) is applicable in Chapter 13 cases only when the debtor seeks a hardship discharge under 1328(b) and then Rule 4007(d) would apply.

17.  Rule 4007(c) requires that creditors with claims that fall within § 523(c) file a complaint to determine dischargeability no later than 60 days after the first date set for the meeting of creditors.

18.  The first date set for the meeting of creditors was April 28, 2016.

19.  June 27, 2016, is the 60th day following the first date set for the meeting of creditors and is therefore the deadline for filing complaints pursuant to Rule 4007(c).

20.   It is clear that "§ 1328(a)(4)" is not specifically described in § 523(c).

21.   Plaintiffs believe therefore that no deadline for filing complaints under § 1328(a)(4) should have been or has been set because this complaint falls under Rule 4007(b).

22.   Because § 1328(a)(4) is a relatively recent addition to the bankruptcy code, because of its similarity to § 523(a)(6), and because a number of attorneys have mistakenly filed complaints under § 523(a)(6) instead of § 1328(a)(4) there is not yet a uniform body of law from the courts as to the applicability, application and timing of claims under § 1328(a)(4).

23.   Plaintiffs have filed this complaint within the 60 day period described by Rule 4007(c) in the event this court or a reviewing court were to disagree with plaintiffs and rule that this complaint is controlled by Rule 4007(c).

24.   Defendant is expected to file an amended form 122 and an amended plan.

25.   Plaintiffs have been informed by the Trustee that the defendant has been told to file an amended form 122 and an amended plan.

26.   As of the date of filing this complaint, defendant has not yet filed any amended schedules, an amended form 122 or an amended plan.

4

27.  It is still uncertain what amount of plaintiffs' claim will ultimately be paid via a plan, if confirmed.

28.  It is possible that the defendant will ultimately file a plan that proposes to pay most or all of the claim of the plaintiffs.

29.  It is possible the defendant will have a plan confirmed that proposes to pay most or all of the claim of the plaintiffs.

30.  It is possible the defendant will complete a plan that pays most or all of the claim of the plaintiffs.

31.  If the court agrees that this complaint is controlled by 4007(b) and not 4007(c), then plaintiffs request the court stay proceeding on this complaint until defendant nears completion of his plan, completes his plan or some other event warrants proceeding on this complaint or such other time as the court finds reasonable.

## Facts

32.  The defendant was the defendant in the state court case captioned "Ross E. McNeil and Leslie K. McNeil v. Milorad P. Ketchens" case number 2010-L-17, in the Circuit Court of the Sixth Judicial Circuit, Champaign County, Illinois.

33.  Plaintiffs filed the complaint against defendant in the state court on January 22, 2010.

34.   On April 29, 2015, following a bench trial and written closing arguments, the court issued a written "Judgment Order" in favor of plaintiffs and against defendant, a copy of which is attached hereto.   (Exhibit A).

35.   In its Judgment Order, the state court found that the defendant had committed an intentional tort.

36.   In its Judgment Order, the state court specifically noted that the defendant admitted to committing the tort and admitted that his acts in committing the tort were intentional.

37.   In its Judgment Order, the state court found that the conduct and actions of the defendant in committing the intentional tort warranted punitive damages.

38.   In its Judgment Order, the state court found that the conduct and actions of the defendant in committing the intentional tort were willful.

39.   In its Judgment Order, the state court found that the conduct and actions of the defendant in committing the intentional tort were malicious.

40.   In its Judgment Order, the state court referenced numerous examples of the conduct and actions of the defendant in committing the intentional tort that caused injury to plaintiffs and their family.

41.  The Judgment Order is replete with descriptions of the mental, emotional and psychological damage inflicted by the defendant on the plaintiffs and their family.

42.  In its Judgment Order, the state court specifically noted that it found that as a physician, the defendant's testimony that he was unaware of the ill-effects he was causing to the plaintiffs was not credible.

43.  The state court specifically found not only that the defendant lacked credibility, but that his testimony was incredible.

44.  The state court also noted throughout the Judgment Order that the trespass and the associated conduct occurring over an extended period of 12 ½ years added to the lack of defendant's credibility.

45.  Plaintiffs perfected a judgment lien against the real estate of the defendant in Champaign County, Illinois, on April 29, 2015, by the recording of a Memorandum of Judgment, a copy of which is attached hereto.  (Exhibit B)

46.  Plaintiffs served a Citation to Discover Assets on defendant on November 12, 2015.  (Exhibit C)

47.  Plaintiffs perfected a lien on all personal property of defendant by filing the Citation with the Clerk of the Court of Champaign County on November 12, 2015.  (Exhibit C)

48.   At the time of the filing of the petition in the bankruptcy case there were proceedings pending in the state court to enforce the judgment against the defendant pursuant to 735 ILCS 5/2-1402.  (Exhibit D)

49.   The only significant debts of the defendant are the claim of the plaintiffs herein, post state court judgment cash advances taken from credit cards the proceeds of which the defendant transferred to his wife, and post state court judgment fees incurred to the defendant's attorneys.

50.   The underlying bankruptcy proceeding was filed for the purpose of avoiding this specific debt and only this debt.

## Argument

51.   § 1328(a)(4) precludes discharge of debts "for restitution, or damages, awarded in a civil action against the debtor as a result of willful or malicious injury by the debtor that caused personal injury to an individual or the death of an individual."

52.   The misconduct of the defendant which resulted in the Judgment Order constituted willful and malicious injury by the defendant to another entity, the plaintiffs, within the meaning of § 1328(a)(4) of the Bankruptcy Code.

53.   The facts of this case establish that the defendant did have the specific intent of causing harm to the plaintiffs as established by the detailed Judgment Order.

54.   The Judgment Order in the state court is *res judicata* as to those facts and findings.  Under Illinois Law, collateral estoppel bars the defendant from relitigating the facts and issues which produced the Judgment Order.

55.   The state court found that defendant caused injury to plaintiffs.

56.   The state court found that defendant's actions were willful.

57.   The state court found that defendant's actions were malicious.

58.   Exceptions to discharge are governed by applicable state law.

59.   In Illinois, the intentional tort of trespass is a personal injury.  A "compensable result of a trespass is personal injury to the owner of the land. If a trespass causes mental distress, the trespasser is liable in damages for the mental distress and any resulting illness or physical harm." Gavcus v. Potts (7th Circuit 1986) 808 F.2d 596, 598.

60.   Punitive damages are a debt owed by a tortfeasor to his victim and in this case they are a debt consequent upon a willful and malicious injury.

61.   Courts have consistently held that bankruptcy is only for "the honest but unfortunate debtor."

62.   Judge Posner summed up why willful and malicious injuries and punitive damages are frequently found non-dischargeable in bankruptcy:

> [W]e imagine that all courts would agree that a willful and malicious injury, precluding discharge in bankruptcy of the debt created by the injury, is one that the injurer inflicted knowing he had no legal justification and either desiring to inflict the injury or knowing it was highly likely to result from his act. To allow him to shirk liability by discharging his judgment debt in those circumstances would undermine the deterrent efficacy of tort law without serving any policy that might be thought to inform bankruptcy law. "The principal purpose of the Bankruptcy Code is to grant a fresh start to the honest but unfortunate debtor." [internal citation omitted] Actually it's not *the* principal purpose of the Bankruptcy Code; it's *a* principal purpose--another is to minimize creditors' losses from defaults. No matter; an honest but unfortunate debtor Larsen is not. And "in the same breath that we have invoked this 'fresh start' policy, we have been careful to explain that the [Code] limits the opportunity for a completely unencumbered new beginning to the 'honest but unfortunate debtor.'" [internal citation omitted, emphasis in original] <u>Jendusa-Nicolai v. Larsen</u> (7th Circuit 2012) 677 F.3d 320.

63.   Defendant in the present case is neither an honest nor an unfortunate debtor.  The state court judgment is replete with examples of the defendant's lack of credibility, his intent to cause the injuries which he is now indebted for and his complete indifference to the effect of his injuries upon the plaintiffs.

10

Wherefore, Ross E. McNeil and Leslie K. McNeil, plaintiffs, pray that the court grant judgment as follows:

A.   Determine that the Judgment Order entered in the Circuit Court of the Sixth Judicial Circuit, Champaign County, Illinois, in case number 2010-L-17, on April 29, 2015, in favor of Ross E. McNeil and Leslie K. McNeil and against Milorad P. Ketchens in the amount of $242,400 plus statutory interest and costs and for all other amounts collectible by the plaintiffs against the defendant under the laws of the State of Illinois for costs, expenses and attorney fees incurred in the collection of that judgment and interest is not subject to discharge in bankruptcy.

B.   Award to the plaintiffs and against the defendant such costs, expenses and attorney fees as may be appropriate under applicable law.

C.   Grant such other relief in favor of the plaintiffs and against the defendant as is appropriate.

Respectfully submitted,

ROSS E. McNEIL
LESLIE K. McNEIL
Plaintiffs

By   /s/ Frederic M. Grosser
   Frederic M. Grosser
   Attorney for Plaintiffs

**IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT
CHAMPAIGN COUNTY, ILLINOIS**

| | | |
|---|---|---|
| ROSS E. McNEIL and<br>LESLIE K. McNEIL, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | No. 2010 L 17 |
| MILORAD P. KETCHENS, | ) ) | |
| Defendant. | ) ) | |

**FILED**
SIXTH JUDICIAL CIRCUIT

APR 2 9 2015

*Ross M. Ballance*
CLERK OF THE CIRCUIT COURT
CHAMPAIGN COUNTY, ILLINOIS K

**JUDGMENT ORDER**

On February 24 and 25, 2015, testimony was heard by bench trial in this cause.  The
Court allowed written Closing Argument and Replies to be provided by the parties.  The Court
has now reviewed the written documentation.

**JUDICIAL NOTICE**

In his closing argument, Defendant requests this Court to take judicial notice of the entire
records of Champaign County Cases 98 CH 235 and 14 MR 85.  (Defendant Closing p. 1).
Plaintiffs in their Reply, object (Plaintiffs' Reply p. 19).  The Illinois Rule of Evidence Rules
201(d) and (e) state:

> (d) **When Mandatory**.  A court shall take judicial notice if requested by a
> party and supplied with the necessary information.

> (e) **Opportunity to be Heard**.  A party is entitled upon timely request to an
> opportunity to be heard as to the propriety of taking judicial notice and the
> tenor of the matter noticed.  In the absence of prior notification, the request
> may be made after judicial notice has been taken.

Defendant continuously cites to the trial transcript from 98 CH 235 and 14 MR 85.
Defendant does not supply the Court with the transcripts from these cases.

1

Defendant makes the request after evidence and in his closing argument without giving the Plaintiffs time to respond. Plaintiffs object in their rebuttal. Defendant's request is not timely.

Further, as Plaintiffs note, Defendant is attempting in most cases to impeach the testimony of the witnesses in the trial in this case, using prior testimony, but without confronting the witness with the prior statement. So, even if the judicial notice was allowed and the testimony was as characterized by Defendant, the Defendant has not completed the impeachment.

Rule 201(c) of the Illinois Rules of Evidence allows the Court to take judicial notice, whether requested or not. This Court, although it did not have to, made sure the parties agreed to the Court taking judicial notice of the Appellate Court rulings in 98 CH 235. This way each side would know exactly what the Court was considering during the trial.

Since this matter has been in litigation for 17 years now, in this Order the Court will only refer to the evidence presented when the need arises.

## APPELLATE COURT DECISIONS
## McNEIL I

On January 6, 2010, the 4th District Appellate Court issued an opinion in 98 CH 235 (McNeil I). On page 377 the Appellate Court states:

> "Count I of their amended complaint seeks a declaratory judgment that Ketchens does not own the driveway (we say "the driveway," but, as we explain, the land in dispute actually consists of about half the total area of the driveway—or the original driveway; we will make these fine distinctions later). Count II seeks to quiet title by adjudging the McNeils to be the owners of the driveway by virtue of their purchase of 609 West Stoughton Street. Count III seeks a judgment that the McNeils have acquired the driveway by adverse possession."

McNeil v. Ketchens, 397 Ill. App. 3d 375, 377 (4th Dist. 2010)

The trial court found in favor of Defendant on all three counts. The Appellate Court affirmed as to Count II, finding that the Plaintiffs did not acquire ownership to Tract A by purchase, but reversed as to Counts I and III. Thus the Appellate Court determined that Defendant did not own Tract A and that Plaintiffs did own Tract A, finding that Plaintiffs

2

acquired ownership by adverse possession through 20 years of ownership between the Plaintiffs and their predecessors in possession of Tract A.

In their Order, the Appellate Court noted that Defendant's attorney disavowed any reliance upon 735 ILCS 5/13-109 and on the quit claim deed Defendant obtained from Winkelmann. The Court further noted that Defendant conceded in his answer that from the quit claim deed he obtained from Roppel, he acquired nothing. The Court noted that the residuary clause of the codicil of Mary Richards left the remainder of the estate – which would include Tract A - to eight separate estates or persons. The Court then notes that the title would have passed through that codicil "unless title passed to someone else by adverse possession." *Id.* at 384.

The Court stated that necessary parties include:

> "…one whose presence is required in the litigation for any one of three reasons: (1) to protect an interest that the party has in the subject matter of the controversy that a judgment might materially affect in the party's absence, (2) to reach a decision that will protect the interests of those who are before the court, or (3) to enable the court to decide the controversy completely. " *Id.* at 391

The Court noted that aside from the Robertses, who quit claimed their interest to Defendant, the residuary clause beneficiaries could file a complaint to determine if they own Tract A, less the Robertses 5%. If that happened, the Plaintiffs could end up litigating adverse possession all over again with these residuary clause beneficiaries. (*Id.* at 392)

On page 394, the Appellate Court stated:

> "Likewise, in the present case the 20-year statute of limitations will bar an action against the McNeils to recover Tract A, despite their longstanding unawareness that the deed to them did not include Tract A, because for more than 20 years, the driveway had been in existence and in plain sight and the only structure the driveway had served was the garage: it went straight from the street to the garage, skirting the house."

The holding in McNeil I then is that Plaintiffs owned Tract A against the whole world unless a residuary clause beneficiary of the Estate of Mary Richards could come in and prove a greater interest than Plaintiffs. The Court stated Plaintiffs acquired that ownership by adverse possession and that Plaintiffs did not obtain ownership by purchase of Tract A since it was not part of the parcel of land they purchased.

**McNeil II**

On November 30, 2011, the 4th District Appellate Court entered an opinion in <u>McNeil v.</u>
<u>Ketchens</u>, 2011 IL App. (4th) 110253 (McNeil II).

In McNeil II, the Appellate Court reaffirmed McNeil I.  Starting at paragraph 8, the Court
said:

> "We affirmed the judgment with respect to count II reasoning that because
> the legal description in the deed to the McNeils' did not include Tract A, the
> McNeils could not have acquired Tract A by virtue of that deed—as the trial
> court had correctly observed  *Id* at 377."

In paragraph 9 the Court noted its ruling on Counts I and III and stated:

> "Thus, as the owners of Tract A by adverse possession, the McNeils had
> standing to contest Ketchens's ownership of Tract A.  And he had no
> ownership interest in Tract A because he had not possessed it, without
> interruption, for seven years while paying the taxes thereon; as section
> 13-109 of the Code of Civil Procedure (735 ILCS 5/13-109 (West 1998))
> required  *McNeal*, 397 Ill App 3d at 401
>
> Our reversal of counts I and III and our affirmance of count II resulted in the
> following
>
> > (1) Milorad P Ketchens has no ownership in Tract A, by adverse
> > possession or otherwise,
>
> > (2) Ross E. McNeil and Leslie K McNeil acquired no ownership
> > interest in Tract A by deed, and
>
> > (2) Ross E McNeil and Leslie K McNeil nevertheless are the legal
> > owners of Tract A in fee simple absolute, by adverse possession."

In paragraph 18 the Court stated that its holding in McNeil I, "is *res judicata* as to
Ketchens."

In paragraph 24 the Court stated:

> "Ketchens appears to argue that because the controversy was, as we said
> in *McNeil,* not "completely decided," our decision in *McNeil* does not bind
> him.
>
> ¶ 25  The resolution in *McNeil* was "incomplete," however, only in the sense that
> other interested persons, i e, the known beneficiaries of Richards's codicil,

4

would not be bound by it—because they were not named and served as parties
(see *Mullane v. Central Hanover Bank & Trust Co.,* 339 US 306, 310 (1950),
*Callner v Greenberg,* 376 Ill 212, 215 (1941), *Anna National Bank v. Prater,*
154 Ill App 3d 6, 14 (1987)) Ketchens, by contrast, was named and served as
a party, and we are unaware of any authority for his suggestion that *McNeil* is
nonbinding on him by reason of its being nonbinding on Richards's
beneficiaries."

In his Closing Argument and Reply, Defendant states that the Appellate Court is wrong
but, he misconstrues their holdings.

McNeil I and II involve the exact same parties, the same tract of land (being Tract A) and
the same facts. As the parties acknowledged by agreeing that the Court could take judicial notice
of McNeil I and II, those holdings are *res judicata* upon the parties herein.

Contrary to Defendant's arguments, the Appellate Court held that Plaintiffs owned Tract
A by adverse possession against all others except maybe the residual beneficiaries, if they ever
decided to get involved. Defendant's whole argument about Plaintiffs only having 5%
ownership misstates the rulings.

According to McNeil I and II, Plaintiffs own Tract A in fee simple.

## 735 ILCS 5/13-109

The Code of Civil Procedure § 5/13-109 states:

"§ 13-109. Payment of taxes with color of title. Every person in the actual
possession of lands or tenements, under claim and color of title, made in
good faith, and who for 7 successive years continues in such possession,
and also, during such time, pays all taxes legally assessed on such lands or
tenements, shall be held and adjudged to be the legal owner of such lands
or tenements, to the extent and according to the purport of his or her paper
title. All persons holding under such possession, by purchase, legacy or
descent, before such 7 years have expired, and who continue such possession,
and continue to pay the taxes as above set forth so as to complete the posses-
sion and payment of taxes for the term above set forth, are entitled to the
benefit of this Section."

98 CH 235 involved the exact same parties, real property and facts as this case. The
parties agreed to this Court taking judicial notice of McNeil I and McNeil II because of the
identity of parties, claims and the final order of the Appellate Court. Those findings and rulings
in McNeil I and II are *res judicata* over the matters set forth in this cause of action. As already
noted above, the Defendant's prior counsel disavowed any reliance on § 13-109. Defendant's

5

argument that the Appellate Court made "factually, incorrect determination that Milorad Ketchens, did not possess "Tract A" without interruption for seven years while paying taxes thereon" (Defendant's Closing p. 13) is a nullity. The Appellate Court ruled on the issues and the facts provided. Defendant removed § 13-109 from the table. That was the Defendant's trial strategy. Defendant cannot now change the facts after a final determination of the Appellate Court. Defendant took 735 ILCS 5/13-109 off the table, the Appellate Court decision is *res judicata* as to those issues here.

Further, even if Defendant did not remove § 13-109 from consideration, it is questionable whether Defendant can claim relief from that section.

Aside from Defendant's testimony, no other evidence was provided that Defendant obtained color of title to Tract A in good faith. Mr. Winkelmann and Ms. Roppel did not testify.

Defendant in this cause has admitted by Requests to Admit that Tract A was owned by the Plaintiffs "at all times set forth herein". In this Court's Order of July 18, 2012, that statement was admitted and the Court explained the reasoning. Defendant has admitted that Plaintiffs owned Tract A prior to Defendant putting his vehicle on that property.

Defendant testified he heard through Berns, Clancy that there was a problem with the properties at 609-613 Stoughton. Defendant then started searching records. On July 31, 1996, Defendant spoke with Attorney Winkelmann, the son of the attorney who had handled the estate. A year and a half later on January 4, 1998, Defendant placed a vehicle on the driveway area of 609 Stoughton. Plaintiff Ross McNeil (Ross) testified that the November before (apparently 1997) he had learned that the Defendant was trying to get a tax bill for the driveway. This is one year and 4 months after Defendant had spoken with Attorney Winkelmann. The evidence from Plaintiffs shows that prior to placing his car on Tract A, Defendant did explain that he was interested in obtaining Tract A, possibly in November 1997, after Defendant learned that Plaintiffs believed something was up with regard to Defendant and their property.

Defendant entered photographs into evidence that he had taken of Plaintiffs' house prior to 1998. Defendant's attorneys in McNeil 1 disavowed any reliance on the Winklemann quit claim deed and Defendant admitted he acquired nothing from the Roppel deed. Although some of those admissions and evidence stated herein came after the lawsuit was filed they are not dispositive of good faith. However, all of the above gives one pause as to whether Defendant's color of title was made in good faith.

Section 13-109 also states that if Defendant obtains color of title and pays the taxes and possesses the property for 7 successive years, he will be adjudged the legal owner "to the extent and according to the purport of his or her paper title." 735 ILCS 5/13-109. Defendant has admitted that the quit claims from Winkelmann and Roppel are worthless. No evidence was provided to this Court as to the specifics of other quit claim deeds except Defendant testified he obtained most of them in January 1999 after Plaintiffs filed 98 CH 235. The "extent" of Defendant's paper title is that before 98 CH 235 was filed Defendant's paper title was worthless.

Finally, as noted in McNeil I adverse possession is acquired after 20 years of continuous, hostile or adverse, actual, open, notorious, and exclusive possession of the premises under claim of title inconsistent with that of the true owner. Our Appellate Court then states:

> "If the statute of limitations bars the titleholder from bringing an action to recover the real estate, the one who possessed the real estate for 20 years effectively becomes its new owner. Thus, the doctrine of adverse possession can establish the adverse possessor's title to the land and divest the previous titleholder of ownership." Id. at 393

What this means is that if the 20 year period is broken or tolled, then the adverse possessor does not obtain ownership. This 20 year period is a statute of limitations period on the owner of the property, meaning the owner has 20 years to contest the possession, of the property, taken by the adverse possessor. How does one attack an adverse possessor's possession? By filing a lawsuit to quiet title.

The same reasoning applies to 735 ILCS 5/13-109. Defendant parked his vehicle on the property in January 1998. Plaintiffs filed their suit to quiet title later that year. Does the adverse possession for 20 year reasoning apply to this statute? As long ago as 1890, in a statute similar to 13-109, our Supreme Court said it does.

> "The claim of seven years' payment of taxes under color of title, and possession after the completion of such tax payment, is also set up as a bar to the claim of appellee. The tax deed was not issued until June 16, 1881, and the bill in this case was filed on the 29th of April, 1887. Seven years did not therefore intervene after color of title was acquired, before suit was commenced, which was necessary to enable appellant to rely on the Statute of Limitations in such a case."

Smith v. Prall, 133 Ill. 308 (1890)

7

Defendant does not have a claim under § 13-109. Defendant's prior counsel was correct to disavow that argument. Defendant's claim under § 13-109 included less than one year of possession before the lawsuit in 98 CH 235 tolled the running period.

## PLAINTIFFS' COMPLAINT

In their Complaint for Trespass filed January 22, 2010, Plaintiffs allege they suffered damages (Paragraph #25), suffered loss of use of their property (Paragraph #26), suffered mental anguish (Paragraph #27) and suffered emotional distress (Paragraph #28) due to Defendant's trespass. In their addendum, Plaintiffs request compensatory and punitive damages. Plaintiffs also allege that Defendant's acts were intentional and with malice.

As noted by Plaintiffs, Defendant has made numerous admissions by Requests to Admit and in his Answer to the Complaint. Further our Appellate Court has noted a number of the facts.

## TRESPASS

"A trespasser is one who enters the premises of the other without permission, invitation, or other right, and intrudes for some purpose of his own, or at his convenience, or merely as an idler." Trout v. Bank of Belleville, 36 Ill. App. 3d 83, 87 (5th Dist. 1976).

As noted previously Defendant admitted Plaintiffs owned Tract A. It has also been admitted by Defendant that he parked his vehicle on Tract A; that one or both Plaintiffs asked Defendant to remove the vehicle and Defendant refused; that Defendant's vehicle(s) was parked on Tract A from January 4, 1998 for approximately 12 ½ years, without permission of Plaintiffs. Defendant admitted that his parking of the vehicle on Tract A was intentional and Plaintiffs suffered a loss of use of Tract A.

Defendant has admitted and the evidence has shown that he trespassed onto Tract A.

In Defendant's Memorandum of Law filed June 6, 2012 to deem facts admitted, Defendant in paragraph 25 on page 12 stated he admits "his act of parking his automobile on Tract A and his act of refusing to remove his automobile on January 4, 1998 were intentional acts."

Despite Defendant's admissions, Defendant argues in his Closing Argument that Defendant's trespass was not intentional (Defendant Closing p. 8). He says this because of a

8

statement made in court in 14 MR 85. This Court has not taken judicial notice of that case, which appears to be a lawsuit over whether Defendant's insurance carrier had any duty to Defendant in reference to the facts involved in this case.

Plaintiffs' Complaint alleges that on January 4, 1998, Defendant parked a vehicle on Tract A. Plaintiffs requested Defendant move the vehicle, he refused and the vehicle remained there. (Paragraphs #14-17) Plaintiffs' Complaint further alleges Defendant committed these acts without permission of Plaintiffs. The Complaint alleges an intentional act. Trespass can be negligent, where an act of a defendant could end up with the consequence of a trespass on a plaintiffs' land; or intentional, where a defendant intentionally performs an act of trespass.

In his testimony, Defendant provides explanations as to why he believed he had a legitimate claim to Tract A. His credibility is important to this Court's determination. This Court will detail many of Plaintiffs' and Defendant's actions later in this order, but for the purpose of determining Defendant's intent in his trespass, the Court needs to speak to the credibility gap between Plaintiffs and Defendant.

Integrity has been defined as "the quality or state of being of sound moral principle; uprightness; honesty, and sincerity." New World Dictionary, Second College Edition, 1974. "…it is synonymous with 'probity', 'honesty', and 'uprightness'." Black's Law Dictionary, Revised Fourth Edition, 1968.

Plaintiffs' actions in regard to Defendant's trespass have shown remarkable restraint. They listened to the police, tried not to confront Defendant after being told not to, obtained counsel and have waited, now almost 17 years through a legal nightmare. Their ability to follow the law and let the judicial process work, no matter how drawn out and frustrating, shows they are people of sound moral principle and uprightness. They are honest and believe in living their lives following the law and doing what is right.

Defendant's actions appear to be the opposite of Plaintiffs'. He hid his intentions from Plaintiffs for over a year, scheming to obtain Tract A. He parked on the driveway in the evening after Plaintiff Leslie had left. Even the Appellate Court noted in McNeil II at paragraph 29, he makes a challenge for a "purely academic reason". In his Closing Argument and Reply for this Court, Defendant either continuously misreads the Appellate Court opinions or just wants to continue to argue for argument sake.

9

After watching Defendant testify, listening to his testimony and comparing it with the Plaintiffs' testimony, the Court finds Plaintiffs are more credible than Defendant.

Defendant repeatedly tries to construct innocent explanations for his actions, i.e.: videotaping Plaintiffs; photographing Plaintiffs' home; running Plaintiff Leslie and her lawn chair off of Tract A with his vehicle; having his wife drive across another neighbor's yard to get her vehicle on Tract A; hiding his intentions from Plaintiffs; and more.

The testimony of the Plaintiffs is more believable in all the areas where their testimonies conflict. Defendant, thus, has little credibility with this Court.

Defendant testified he is a physician. The evidence showed Defendant was practicing as a physician back in the late 1990's. The modern version of the Hippocratic Oath written in 1964 by Louis Lasagna, the Academic Dean of the School of Medicine at Tufts University states in part: "I will remember that there is art to medicine as well as science, and that warmth, sympathy, and understanding may outweigh the surgeon's knife or the chemist's drug", and further states: "I will remember that I remain a member of society, with special obligations to my fellow human beings, those sound of body as well as the infirm."

On direct examination Defendant testified as follows:

> "Q.    Did either of the McNeils ever tell you that they were suffering ill effects to their health because the car was there?
>
> A.    No.
>
> Q.    Did you intend to cause ill effects to the McNeils?
>
> A.    No.
>
> Q.    What was your purpose in putting the car there?
>
> A.    Was to obtain ownership of Tract A.
>
> Q.    Did you ever do anything to attempt to irritate or confront the McNeils hoping that they would move?
>
> A.    No."

Trial Transcript Vol. 2, pp. 69-70.

Defendant testified he and his wife would occasionally walk their dog by Plaintiffs' house. There is testimony of videotaping. Defendant said he would watch his car from a window in his home.

10

There is testimony that before Defendant parking his vehicle on the driveway, the Plaintiff Leslie had gardens around parts of the house, including very close to where Defendant parked his vehicle. The testimony is that the gardening near Defendant's vehicle stopped and thus the area did not look the same.

Defendant had been watching and taking pictures of Plaintiffs' house for at least a year prior to parking his vehicle on Tract A. The Plaintiffs had two small children at that time. Plaintiffs and Defendant testified about the toy incidents. Plaintiffs testified about the parties they had held that stopped. Yet Defendant who had been watching and photographing Plaintiffs' home apparently did not notice the garden not being tended, the toys no longer being in the front, the lack of parties or any other behavioral changes around the Plaintiffs' home.

Plaintiffs may not have told Defendant of any suffering, or as Defendant testified to, he never intended to cause ill effects. But, Defendant's actions clearly irritated Plaintiffs. Defendant, a person who spent years studying medicine and the human being, who understands that warmth, sympathy and understanding could be important for a person's health, and who understands he has a special obligation to his fellow human beings, testifies that he was oblivious to plaintiffs' irritations.

The Court not only does not find this credible, the Court finds Defendant's testimony incredible.

The Court notes Defendant's lack of credibility throughout this matter and now must determine his intent in trespassing on Tract A. The Court finds it difficult to believe that Defendant truly believed he had a viable claim to Tract A when on January 4, 1998, he put his vehicle on that property or that he truly believed he had a viable claim to Tract A when he kept a vehicle on that property for each and every day thereafter for 12 ½ years.

Plaintiffs have proven Defendant's acts were intentional and the evidence shows Defendant trespassed on property owned by Plaintiffs by placing a vehicle on Plaintiffs' property, Tract A.

11

## DAMAGES

## COMPENSATORY

Plaintiffs have proven a trespass and are entitled to damages. "Every trespass entitles the Plaintiff to at least nominal damages." Johnson v. Tipton, 103 Ill. App. 3d 291, 296-97 (2nd Dist. 1982). Plaintiffs have not put on any evidence of compensatory damages. Defendant, however, presented such evidence. Christine Gunther an accountant testified what the value of a space to park one's car in that neighborhood was. Plaintiffs testified that they had parked vehicles on Tract A and the other part of the driveway. Defendant put his car there. Ms. Gunther provided evidence of the going rate for outside parking of a vehicle on private property in that area. The current rate when she testified was $50/month for outside parking. The rate between 1998 until 2 years before she testified, she believed, was $40/month.

Defendant's act was an intentional act which occurred every day for 12 ½ years. Plaintiffs in their Complaint request compensatory damages beginning January 4, 1998.

Plaintiffs are entitled to compensatory damages. Defendant acknowledges that the proof from Ms. Gunther would be compensatory damages of $2400. This is not because of the fact that Plaintiffs did not have to pay for parking as Defendant alleges but because Defendant has proven that, if the only use of the property was for parking, the going rate in that area would be $2400 over the period of the trespass.

Plaintiffs have not proven any other compensatory amounts in damages. Plaintiffs have proven that Defendant's actions had an adverse effect on Plaintiffs and their children.


## PUNITIVE

Plaintiffs have requested punitive damages. Plaintiffs have alleged and proven an intentional tort by Defendant. Plaintiffs have alleged Defendant's acts were done with malice. "Malice is a question of fact to be determined by the trier of fact and it can be inferred when one acts with a wanton, willful, or reckless disregard for the rights of another. [citations] The defiant, irresponsible, and aggravating conduct of the defendants in the case at bar amply supports an award of punitive damages." Miller v. Simon, 100 Ill. App. 2d 6 (1st Dist. 3rd Div., 1968).

12

In *Chicago Title v. JS II, LLC*, 2012 Ill. App. (1st) 063420 (1st Dist., 6th Div.) the Court stated:

"¶ 85  Generally, punitive damages are awarded when the underlying tort is accompanied by aggravating circumstances such as willful, wanton, malicious, or oppressive conduct. *In re Estate of Hoellen*, 367 Ill. App. 3d 240, 253, 305 Ill. Dec. 182, 854 N.E.2d 774 (2006). "Punitive damages are not awarded as compensation, but instead serve to punish the offender and deter him and others from committing similar acts of wrongdoing in the future." *Id.* The decision to grant punitive damages is a question of law, which we review *de novo. Id.*

¶ 86  The trial court found that the defendants' trespass was both intentional and malicious, committed with the aim of pressuring South Branch to sell a portion of its property. The trial court awarded $10,000 in punitive damages to punish and deter the defendants from engaging in similar conduct. The defendants' clear desire to force their will upon South Branch, as the trial court found, persuades us that the trial court did not err in concluding that the defendants needed to be deterred from similar acts of wrong doing. We also agree with the trial court's observation that the defendants have no real use for the right-of-way that crosses the South Branch property, which supports its finding of bad faith."

I.P.I. 35.01 instructs a jury as to punitive damages and the factors to be considered. It states:

In addition to compensatory damages, the law permits you under certain circumstances to award punitive damages. If you find that _____
(Defendant's name)
conduct was [fraudulent] [intentional] [willful and wanton] and proximately caused [injury] [damage] to the plaintiff, and if you believe that justice and the public good require it, you may award an amount of money which will punish _____ and discourage [it/him/her] and others from similar conduct.
(Defendant's name)

In arriving at your decision as to the amount of punitive damages, you should consider the following three questions. The first question is the most important to determine the amount of punitive damages:

1.  How reprehensible was _____ conduct?
(Defendant's name)

On this subject, you should consider the following:

a)  The facts and circumstances of defendant's conduct;
b)  The [financial] vulnerability of the plaintiff;
c)  The duration of the misconduct;
d)  The frequency of defendant's misconduct;
e)  Whether the harm was physical as opposed to economic;

13

     f)  Whether defendant tried to conceal the misconduct;

     g)  [other]

2.  What actual and potential harm did defendant's conduct cause to the plaintiff in this case?

3.  What amount of money is necessary to punish defendant and discourage defendant and others from future wrongful conduct [in light of defendant's financial condition]?

    [In assessing the amount of punitive damages, you may not consider defendant' similar conduct in jurisdictions where such conduct was lawful when it was committed.]

    The amount of punitive damages must be reasonable [and in proportion to the actual and potential harm suffered by the plaintiff.]

At first blush, one would look at the situation and say "so what." Defendant's car was parked on Plaintiffs' property, it is diminimis.

The trial testimony showed that unbeknownst to the Plaintiffs, after Plaintiff Leslie left in the early evening on January 4, 1998, in the darkness, Defendant placed a car on the Plaintiffs' driveway. Plaintiff Leslie testified when she arrived back home she had to slam on her brakes while pulling into the driveway. Defendant was there putting a cover on his car. She said she screamed at Defendant telling him to move his car. Defendant refused. Leslie argued with Defendant and finally went inside to give her child the medication she had gone out to get. Plaintiff Ross replaced her outside.

Ross ended up calling the police, who spoke to Defendant. Defendant had the quitclaim deed from Winkelmann. The police told Ross there was nothing they could do.

Defendant stated on that date he drove his 1980 BMW S 235, which was licensed and insured onto Tract A and locked a cover on it. He notified the police when they came that he had a quit claim deed and was paying taxes on the property.

Defendant testified he started doing his research and by July 31, 1996, he went to see Attorney Winkelmann.

Prior to that time he had obtained information from Berns, Clancy and researched the records as to Tract A as far back to at least 1905. In all of his research and discussions, Defendant learned that his best route to obtain Tract A as his own property was through adverse possession. He then parked his car on Tract A on January 4, 1998. In responding to a question

14

from the Court, Defendant testified that he knew about all types of adverse possession before he parked his car on Tract A.

The Appellate Court noted in McNeil I and as has been shown by the photographs admitted into evidence, Defendant's car was parked next to the Plaintiffs' house.

Later in McNeil I, the Appellate Court stated:

> "…it is a definite and incontrovertible fact that since 1937, a house and garage have stood on 609 West Stoughton Street and a driveway has led straight from the street to the garage, running alongside the house. Ketchens does not dispute that fact in his brief. Nor does he suggest that the driveway disappeared and reappeared. It also is a definite and incontrovertible fact that for more than 20 years before the commencement of this lawsuit, the house—and therefore the driveway running alongside the house and leading to the garage—never was abandoned.
>
> A misguided notice of abandonment seems to lie behind the trial court's second reason for rejecting the McNeils' claim of adverse possession. The court held that when Haight and his wife bought a new house and moved out of 609 West Stoughton Street, leaving it vacant for approximately one month until the new owners moved in, the one-month vacancy constituted a break in the continuity of possession. That holding is erroneous as a matter of law. The Haights did not abandon the property by moving out of it and putting it up for sale, and such temporary period of vacancy incident to the sale of the property, between the previous owner moving out and the new owner moving in, do not interrupt the adverse possession." *Id.* at p. 378

Later in McNeil I, the Court stated:

> "So, with the ambition of righting the westward tilt of his eastern boundary, Ketchens went about attempting to obtain title to Tract A. He solicited and obtained a total of eight quitclaim deeds to Tract A. The first deed, dated March 31, 1997, was from an attorney, Wendell G. Winkelman, who, the parties agree, had no interest in Tract A to convey. It appears that Ketchens's objective, however, was to obtain color of title so that the county would assign a tax identification number to Tract A and bill him for the taxes and that by paying the taxes, he eventually, in seven years, would become the owner of Tract A. The problem was that section 13-109 of the Code of Civil Procedure (735 ILCS 5/13-109 (West 1996)) required actual possession of the land for seven years while paying the taxes thereon and the McNeils had been using Tract A as their driveway and did not show any inclination to stop doing so. Perhaps it was for that reason, during trial, that Ketchens's attorney disavowed any reliance on section 13-109 and Winkelman's quitclaim deed.

15

In his answer, Ketchens likewise conceded he had acquired nothing from the second quitclaim deed, the one he obtained from Virginia Roppel on November 17, 1997." *Id.* at p. 381-2

As the 4th District Appellate Court noted in McNeil II at paragraph 5:

"Apparently, he intended to acquire ownership of Tract A through adverse possession, together with payment of taxes, for seven years (see 735 ILCS 5/13-109 (West 1998)) *Id* at 381

¶ 6    On December 22, 1998, to head off this gambit, the McNeils filed a civil complaint against Ketchens, and they also named all "unknown owners and nonrecord claimants"

As this Court has previously noted, from at least the time of <u>Smith v. Prall</u>, 133 Ill. 308 in 1890 and for the next 125 years, the law as to adverse possession has been the same.  In December 1998, when Plaintiffs filed their lawsuit, any 20 year or 7 year statute of limitations was then tolled and Defendant could not keep the clock running as far as adverse possession was involved.  For the next 11½ years, Defendant kept a vehicle parked on Plaintiffs' driveway.

Defendant's Closing Argument and Reply are replete with references as to what people, who did not testify in court, thought about certain issues.  What was said in conversations with Defendant or why people did things in response to Defendant are speculation.  The 4th District did note in McNeil II that Defendant was challenging an issue for a "purely academic reason." McNeil II at ¶ 29

In his Closing Argument, Defendant states "If four licensed attorneys and a Circuit Judge all believed that the Plaintiffs Ross McNeil and Leslie McNeil did not have any ownership in "Tract A", why would the Defendant believe anything different, when he parked and kept his car on "Tract A"?"  (Closing Argument p. 29).

There is no evidence at all as to what those four licensed attorneys believed or what they said to Defendant before Defendant acted.  We do know that counsel for Defendant disavowed Defendant's rationale before the Appellate Court.

Judge Clem's reasoning, as explained by the Appellate Court in McNeil I was "erroneous as a matter of law," and it did not stand up to scrutiny, and at one point misguided.  McNeil I at 378

16

Attorneys are advocates and can be very persuasive, even when arguing against existing law.  This Court can only, by conjecture, know what any counsel truly believed, and in this case what any attorney, told Defendant.

Defendant, however, the testimony showed, was involved in research on the property for over 1½ years before January 4, 1998, and knew the law on adverse possession.

What the evidence has shown is that for approximately 1½ years the Defendant hid his intent from Plaintiffs.  Defendant testified he only spoke to them about his desire to obtain "Tract A" after he parked his car.  (Although Plaintiffs testified it occurred in November 1997.)  Then he tried to negotiate.  As stated earlier, the evidence shows Defendant was taking pictures of Plaintiffs' house as early as 1997.  These are not just pictures of the driveway area.  (See Defendant's Exhibits 1-9)  Defendant apparently had no use for Tract A except to be able to make a land swap with another neighbor.

The evidence shows that on January 4, 1998, Plaintiffs parked a vehicle on the apron of the driveway.  As noted in McNeil I, this is part of Tract A.  Defendant called the police on Plaintiffs car being there.  The police asked Plaintiffs not to confront the Defendant and to move the car.  Plaintiffs did so.

Defendant admitted that he acquired the deed from Winkelmann who counsel later disavowed as a titleholder, acquired a deed from Roppel who Defendant knew was not a titleholder, and did not acquire the other deeds until January 1999, after Plaintiffs filed 98 CH 235.  Of course, at that time, the law in Illinois for over a century was that Defendant's 7 year period had stopped since Plaintiffs had contested Defendant's attempt of adverse possession.

Defendant however persisted in his attempt to acquire the land.  The Plaintiffs and Defendant all testified that Defendant, with his wife, had videotaped in the area of car.  Both Plaintiffs testified to numerous videotaping.  Plaintiff Leslie said about a dozen times and she testified it was "creepy".  Defendant testified that he and his wife videotaped a number of times to protect him if anyone jumped out at them.  He also stated he video recorded Plaintiff Ross putting a new roof on his home.

Plaintiff Leslie testified that Defendant had called the police on them a number of times and the police continued to just tell Plaintiffs to stay away from the car.

There is testimony about Defendant moving some of Plaintiffs' children's toys. Defendant's testimony about all of this was that he was just trying to protect his rights towards obtaining Tract A.

Plaintiffs testified as to Defendant coming over to the car on Tract A, taking the cover off the car, flashing the lights and revving the engine. Defendant denies this behavior. He does admit to having the confrontation with Plaintiff Leslie when he and his wife exchanged the vehicle on Tract A and drove over the neighbor's yard while Leslie tried to put herself and a lawn chair in the space.

The cold record of the proceedings does not come close to demonstrating the frustration that the Plaintiffs testified to in dealing with Defendant. Although they do testify as to their hopelessness at times, the live testimony presented shows their emotion and frustration coming out. Plaintiff Leslie's anger, frustration and hopelessness was palpable. In this Court's 30 years on the trial bench, Plaintiff Ross is one of the only adult men to testify and tear up over his feelings of inadequacy brought on by Defendant's actions.

The Court finds that the Defendant was intent on obtaining ownership of Tract A no matter what Plaintiffs did. From the Plaintiffs' testimony, it became equivalent to a stalking situation to make Plaintiffs uncomfortable on their own property, constantly being watched, videotaped and having the police called on them. Then having the police tell Plaintiffs to stay away from any confrontation with Defendant which clearly psychologically beat Plaintiffs down.

As already found by the Court, Defendant's actions were intentional, but further from all of the above, the Court finds Defendant's actions were willful and wanton and included a conscious disregard for the Plaintiffs in his attempt to obtain ownership of Tract A. Further, the Court determines that Defendant's actions damaged Plaintiffs. Thus Plaintiffs are allowed to recover punitive damages from Defendant.

While it is true that a rational person could hear that someone parked a vehicle on another's property and feel that damages should be diminimis, the evidence presented even shocked the conscience of this Court. It is hard to believe that Defendant could not realize that the totality of his actions could affect Plaintiffs' family as it did. Defendant, the evidence shows, is a trained physician still practicing medicine and seeing patients.

We have a family who tried to follow the law. Although not condoned by the Court, a logical scenario for what Defendant did for 12 ½ years could have led a lot of people to violate

18

the law. Plaintiffs, though, listened to their counsel and the police who cautioned Plaintiffs not to confront Defendant. No testimony was presented that Defendant's vehicles on Tract A were ever damaged. No scratches, no deflated tires. No testimony was presented that Defendant's vehicles on Tract A ever ended up in the street, or that the covers were removed. Plaintiffs just waited and waited for the court case to wind its way through the system.

During that time the testimony shows Plaintiffs lives were substantially affected by Defendant's actions. Along with the vehicles parked on Tract A, Defendant's videotaping, watching and calling the police (with the accompanying advice by the police to the Plaintiffs), the Plaintiffs rightfully felt that their whole life was exposed to Defendant. They felt Defendant controlled their movements and actions to the area of their house by the driveway. So what did Plaintiffs do? They tried to avoid, as best they could, any contact with the Defendant's vehicle and the area around it. They stopped using part of the front of their house. Their children were warned to stay away. Construction equipment and debris were brought in and out so to avoid Defendant's vehicle.

Plaintiffs stopped having parties and people over. After Defendant's vehicle was parked on their driveway for years, they felt the whole world knew they were apparently impotent to get it removed. The vehicle became a source of continued conversation for friends and family and a source of continued embarrassment and thus frustration to Plaintiffs.

Plaintiffs' children lived most if not all of their grade school, middle school, high school and college years constantly being warned about not being near Defendant's vehicle. They could not play out front, they could not have friends over who might have come into contact, either negligently or willfully, with Defendant's vehicle. Parties for them at home stopped. Their parents were frustrated and their father ended up sleeping on the couch for two years.

How many 14 or 15 year old boys would draw a picture for their mom to cheer her up depicting their own car being parked on their own driveway? See Plaintiffs' Exhibit #4. This picture alone shows how Defendant's action consumed the whole family.

Plaintiff Leslie testified she was angry and frustrated all the time. She was embarrassed and felt hopeless. She testified how her educational dreams were wiped out by Plaintiffs' inability to move to another area (because of their inability to sell the house and property) so she could obtain the benefit of her PhD. She testified as to job opportunities lost.

She also testified how she ended up blaming her husband for all the delays and it almost ended their marriage.

Again, the cold, hard transcript does not do justice to the clear hopelessness heard by the Court from the Plaintiffs.

Leslie testified that after Defendant's vehicle was moved she began leaving her house more often and resumed gardening.

As to the reprehensibility of Defendant's conduct the Court notes:

A) Aside from the facts stated above, Defendant's conduct tied up the ability of Plaintiffs to sell their house. Not being able to move meant (1) their Stoughton starter home became their permanent home; (2) Plaintiff Leslie's PhD became worthless for her future employment plans; (3) Plaintiffs ended up putting a second floor on a 100 year old house needing special engineering and construction.

B) The testimony of Plaintiffs is full of what it cost to try to keep their property, Tract A: attorney's fees, their time consumed working on the case, lost employment opportunities which would have led to career advancement and extra expenses of construction. The Plaintiffs have been in litigation since 1998.

C) Defendant's vehicle stayed on Plaintiffs' property for 11½ years after Plaintiffs filed 98 CH 235. During this time, Defendant's theory of law by which he could obtain Tract A went against long standing law that he stated he had researched. Defendant still has the audacity to claim McNeil I and McNeil II were wrongfully decided.

D) Defendant's misconduct occurred every day since January 4, 1998 until the vehicle was removed in June 2010. This is an intentional tort.

E) No physical damage was done by Defendant. Economic damage is stated in B), above. The damage to Plaintiffs' mental well-being and family unit has been stated throughout this Order.

F) Defendant attempted to conceal his actions prior to placing his vehicle on Tract A. After that he did not.

G) It is hard to quantify the damage done to every member of Plaintiffs' family. The hopelessness, the feelings testified to of basically being constrained in your daily life in your own home. The facts show that on a daily basis each member of Plaintiffs' family unit was affected as to how they would live.

20

Exhibit A

Defendant's actions basically controlled Plaintiffs' lives each and every day with regard to such things as to where they could go on their property, what recreational activities they could be involved in, how they spent their time (researching titles and law), who they had contact with and who they would now invite into their home. Plaintiffs, in wanting to do the right thing and not get in trouble with the law, became prisoners in their own home. Both Plaintiffs' children testified of the emotional toll this matter took on their mother

Defendant's W-2 forms for 2014 (Plaintiffs' Exhibit #5) shows Defendant had at least gross income of at least $148,539.61. Defendant has waged this battle for years in the face of law showing he could not prevail if the matter proceeded to its finality. The testimony showed Defendant's actions turned Plaintiffs' lives upside down through the majority of their children's minority if not longer.

The Court is aware that punitive damages should be proportionate to the compensatory award. However, Defendant's intentional and reprehensible conduct in regards to his control over Plaintiffs needs to be punished to deter others from acting in a similar way. In fact, this conclusion was summed up by the testimony where it was noted by Plaintiffs that even when this case is over, Defendant will still live there – and they know with him it will never be over.

FINDING in favor of Plaintiffs and against Defendant for the intentional tort of trespass. JUDGMENT entered in favor of Plaintiffs in the amount of $2,400.00 compensatory damages; $240,000.00 punitive damages and cost of suit.

DATE: April _29_, 2015          ENTER: _____

JEFFREY B. FORD, Circuit Judge

8 1 3 7 4 1 0
Tx:4054940

2015R07078
REC ON: 04/29/2015 1:42:42 PM
CHAMPAIGN COUNTY
BARBARA A. FRASCA, RECORDER
REC FEE: 43.00
PAGES 1
PLAT ACT: 0PLAT PAGE:

IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT

CHAMPAIGN COUNTY, ILLINOIS

ROSS E. McNEIL and          )
LESLIE K. McNEIL,           )
                            )
            Plaintiffs      )
                            )
      v.                    )   No. 2010-L-17
                            )
MILORAD P. KETCHENS,        )
                            )
            Defendant       )

MEMORANDUM OF JUDGMENT

On April 29, 2015, a judgment was entered herein in the amount of $2,400.00 for compensatory damages, $240,000.00 for punitive damages and for costs, in favor of Ross E. McNeil and Leslie K. McNeil and against Milorad P. Ketchens, 613 West Stoughton Street, Urbana, Illinois.

ENTER:

Date  7/29/15

JUDGE

Prepared by and return to:
Frederic M. Grosser
Suite 503
201 West Springfield Avenue
Champaign, Illinois 61820
(217) 352-2784

N THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT

CHAMPAIGN COUNTY, ILLINOIS

FILED
SIXTH JUDICIAL CIRCUIT
NOV 1 2 2015
CLERK OF THE CIRCUIT COURT
CHAMPAIGN COUNTY, ILLINOIS

ROSS E. McNEIL and )
LESLIE K. McNEIL, )
                    )
        Plaintiffs )
                    )
    v.              )   No. 2010-L-17
                    )
MILORAD P. KETCHENS, )
                    )
        Defendant )

AFFIDAVIT OF SERVICE OF CITATION

Frederic M. Grosser on oath states as follows:

1.   He is over the age of 18 years and he is not a party to
this action.

2.   On November 12, 2015, at the hour of 8:45 a.m., he
served the Third Alias Citation and Certification issued on
October 29, 2015, to Milorad P. Ketchens and the Citation Notice
by personally delivering copies in hand to Milorad P. Ketchen in
open court in Court Room K in the Champaign County Court House,
101 East Main Street, Urbana, Illinois.

3.   He stated the contents of the contents of the papers
being served.

_____
Frederic M. Grosser

Under penalties as provided by law pursuant to Section
1-109 of the Code of Civil Procedure, the undersigned certifies

1

that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

Date   *November 12, 2015*   _____
                                  Frederic M. Grosser

Frederic M. Grosser
Suite 503
201 West Springfield Avenue
Champaign, Illinois 61820
(217) 352-2784
fgrosser@ameritech.net

## CIRCUIT COURT OF ILLINOIS

### Sixth Judicial Circuit
### Champaign County

Ross E. McNeil and Leslie K. McNeil
_____
   Petitioner / Judgment Creditors

   vs.                                          Case No. 2010-L-17

Milorad P. Ketchens
_____
   RESPONDENT / Judgment Debtor

# THIRD ALIAS CITATION AND CERTIFICATION

The Circuit Clerk has reviewed the below listed Petitioners' Attorney Certification and based thereon issues this citation.

1.  The last known address of the Judgment Debtor is: 613 West Stoughton Street, Urbana, Illinois 61801

2.  The name, address, phone number and email of the Petitioners' attorney is: Frederic M. Grosser, Suite 503, 201 West Springfield Avenue, Champaign, Illinois 61820, (217) 352-2784, fgrosser@ameritech.net

3.  The current balance, including costs, interest and attorney's fees, if applicable, is: $244,410.45

4.  You, the RESPONDENT, are hereby ordered to appear for examination before the Court in courtroom K, Champaign County Courthouse, 101 East Main Street, Urbana, Illinois, at 9:00 am on December 2, 2015

    At this hearing you may be questioned by the Petitioners, their counsel or by the Court to discover assets or income not exempt from execution.

    **You are commanded to produce at the examination the documents in the attached "List of Documents" and to complete and return the enclosed "Income and Asset Form."**

    **MAILING, ELECTRONICALLY TRANSMITTING, OR PERSONALLY DELIVERING THE REQUESTED DOCUMENTS AND THE COMPLETED INCOME AND ASSET FORM TO THE PETITIONERS' ATTORNEY LISTED ABOVE ON OR BEFORE NOVEMBER 26, 2015 WILL EXCUSE YOUR PERSONAL APPEARANCE AND NO EXAMINATION WILL BE REQUIRED. If you fail to respond to this citation by not returning copies of the requested documents by November 26, 2015 you must appear in person on December 2, 2015 with the original documents.**

    **IF YOU FAIL TO APPEAR IN COURT AS DIRECTED IN THIS NOTICE, YOU MAY BE ARRESTED AND BROUGHT BEFORE THE COURT TO ANSWER TO A CHARGE OF CONTEMPT OF COURT, WHICH MAY BE PUNISHABLE BY IMPRISONMENT IN THE COUNTY JAIL.**

### PETITIONERS' ATTORNEY CERTIFICATION

I, the undersigned certify, under penalties of perjury pursuant to 735 ILCS 5/1-109 and state the following:

1.  Amount of Judgment:      $242,400.00
2.  Date of Judgment:        April 29, 2015
3.  Balance currently due:   $244,410.45 (as of October 29, 2015)

_____  10/29/2015
Signature of Petitioner's Attorney

WITNESS, Katie M. Blakeman, Clerk of the Circuit Court of Champaign County, Illinois this ___ day of _____, 20___.

_____
Clerk of the Circuit Court

# STATE OF ILLINOIS

## IN THE CIRCUIT COURT OF THE 6th JUDICIAL CIRCUIT

## CHAMPAIGN COUNTY

Ross E. McNeil and Leslie K. McNeil

      Plaintiffs / Judgment Creditors

          vs.                     Case No.  2010-L-17

Milorad P. Ketchens

      Defendant / Judgment Debtor

### CITATION NOTICE

Name and Address of Debtor:

 Milorad P. Ketchens, 613 West Stoughton Street, Urbana, Illinois 61801

Name and Address of Judgment Creditor or Judgment Creditors Attorney:

 Frederic M. Grosser, Suite 503 West Springfield Avenue, Champaign, Illinois 61820

 (217) 352-2784  (fgrosser@ameritech.net)

A judgment in favor of  Ross E. McNeil and Leslie K. McNeil                                             ,

and against  Milorad P. Ketchens                                                                                      ,

was entered on  April 29, 2015                        , in the amount of  $242,400.00                    .

Name of Person Receiving Citation:  Milorad P. Ketchens

Court Date and Time:  December 2, 2015 at 9:00 am                                                            ,

in courtroom  K   of the Champaign County Courthouse, 101 East Main Street, Urbana, Illinois.

NOTICE: The court has issued a citation against the person named above. The citation directs that person to appear in court to be examined for the purpose of allowing the judgment creditor to discover income and assets belonging to the judgment debtor or in which the judgment debtor has an interest. The citation was issued on the basis of a judgment against the judgment debtor in favor of the judgment creditor in the amount stated above. On or after the court date stated above, the court may compel the application of any discovered income or assets toward payment on the judgment.

The amount of income or assets that may be applied toward the judgment is limited by federal and Illinois law. The JUDGMENT DEBTOR HAS THE RIGHT TO ASSERT STATUTORY EXEMPTIONS AGAINST CERTAIN INCOME OR ASSETS OF THE JUDGMENT DEBTOR WHICH MAY NOT BE USED TO SATISFY THE JUDGMENT IN THE AMOUNT STATED ABOVE:

(1) Under Illinois or federal law, the exemptions of personal property owned by the debtor include the debtor's equity interest, not to exceed $4,000 in value, in any personal property as chosen by the debtor; Social Security and SSI benefits; public assistance benefits; unemployment compensation benefits; worker's compensation benefits; veteran's benefits; circuit breaker property tax relief benefits; the debtor's equity interest, not to exceed $2,400 in value, in any one motor vehicle, and the debtor's equity interest, not to exceed $1,500 in value, in any implements, professional books, or tools of the trade of the debtor.

(2) Under Illinois law, every person is entitled to an estate in homestead, when it is owned and occupied as a residence, to the extent in value of $15,000, which homestead is exempt from judgment.

(3) Under Illinois law, the amount of wages that may be applied toward a judgment is limited to the lesser of (i) 15% of gross weekly wages or (ii) the amount by which disposable earnings for a week exceed the total of 45 times the federal minimum hourly wage or, under a wage deduction summons served on or after January 1, 2006, the Illinois minimum hourly wage, whichever is greater.

(4) Under federal law, the amount of wages that may be applied toward a judgment is limited to the lesser of (i) 25% of disposable earnings for a week or (ii) the amount by which disposable earnings for a week exceed 30 times the federal minimum hourly wage.

(5) Pension and retirement benefits and refunds may be claimed as exempt under Illinois law.

The judgment debtor may have other possible exemptions under the law.

THE JUDGMENT DEBTOR HAS THE RIGHT AT THE CITATION HEARING TO DECLARE EXEMPT CERTAIN INCOME OR ASSETS OR BOTH. The judgment debtor also has the right to seek a declaration at an earlier date, by notifying the clerk in writing at Circuit Clerk, 101 East Main Street, Illinois 61801. When so notified, the Clerk of the Court will obtain a prompt hearing date from the court and will provide the necessary forms that must be prepared by the judgment debtor or the attorney for the judgment debtor and sent to the judgment creditor and the judgment creditor's attorney regarding the time and location of the hearing. This notice may be sent by regular first class mail.

Prepared by:

Name: Frederic M. Grosser

Address: Suite 503, 201 West Springfield Avenue

City, State, Zip Code: Champaign, Illinois 61820

Phone: (217) 352-2784

E-mail: fgrosser@ameritech.net

# CIRCUIT COURT OF ILLINOIS

## Sixth Judicial Circuit
### Champaign County

### INCOME AND ASSET FORM

To Judgment Debtor: Please complete this form and bring it with you to the hearing referenced in the enclosed Citation notice. You should also bring to the hearing any documents you have to support the information you provide in this form, such as pay stubs and account statements. The information you provide will help the Court determine whether you have any property or income that can be used to satisfy the judgment entered against you in this matter. The information you provide must be accurate to the best of your knowledge.

If you fail to appear at this hearing, you could be held in contempt of court and possibly arrested.

In answer to the Citation and supplemental proceedings served upon the Judgment Debtor, he or she answers as follows:

Name: _____ Home Phone Number: _____

Home Address: _____

Date of Birth: _____ Marital Status: _____ I have _____ dependents.

Do you have a job? ☐ YES ☐ NO

Company's name I work for: _____

Company's address: _____

**Job**:

    I earn $ _____ per _____

    If self employed, list here your business name and address:

    _____

    Income from self employment is $ _____ per year

    I have the following benefits with my employer: _____

I do not have a job, but I support myself through:

    Government Assistance $ _____ per month    SSI $ _____ per month

    Unemployment $ _____ per month    Pension $ _____ per month

    Social Security $_____ per month    Other $ _____ per month

**Real Estate**:

Do you own any real estate? ☐ YES ☐ NO

I own real estate at _____

with names of other owners _____

Additional real estate I own: _____

_____

I have a beneficial interest in a land trust. The names and address of the trustee is: _____

_____

The beneficial interest is listed in my name and _____

There is a mortgage on my real estate. State the mortgage company's name and address for each parcel of real estate owned: _____

_____

_____

An assignment of beneficial interest in the land trust was signed to secure a loan from: _____

_____

**I have the following accounts:**

Checking account at _____   Checking account balance $ _____

Savings account at _____   Savings account balance $ _____

Money market or certificate of deposit at _____

Safe deposit box at _____

Other accounts (please identify): _____

_____

_____

_____

**I Own:**

Vehicles (state year, model, and VIN):

_____

_____

Jewelry (please specify): _____

Other property described as: _____

Stocks/Bonds: _____

Personal computer: _____

DVD player: _____

Television: _____

Stove: _____

Microwave: _____

Work tools: _____

Business equipment: _____

Farm equipment: _____

Other property (please specify): _____

The undersigned certifies, under penalties provided by law pursuant to 735 ILCS 5/1/109, that the information contained herein is true and correct.

Signature: _____   Date: _____

## List of Documents

You are commanded to produce:

1. Signed advance payment retainer agreements and any other fee agreements with Hinshaw & Culbertson LLP.

2. Documentation of the amount and of disposition of all withdrawals from defendant's accounts at University of Illinois Employees Credit Union and from all other financial institutions in which defendant has an account from January 22, 2010, to date of production.

3. Documentation of all life insurance policies owned by or insuring defendant and of the cash value of such policies which are in effect at the time of production or at any time since January 22, 2010.

4. Documentation of all other insurance policies owned by defendant or insuring property purchased in whole or in part with money of defendant.

5. Copies of titles, most recent registrations and bills of sale of all motor vehicles in defendant's name or purchased with money of defendant since January 22, 2010, and documentation of transfer of title of any such vehicle by defendant to another person.

6. All records including but not limited to monthly or periodic statements, checks, deposit slips, withdrawal forms, ATM withdrawals for all banks, savings associations, credit unions and any other financial institutions in the name of defendant alone or with any other person or under the signatory authority of defendant since January 22, 2010.

7. All records including but not limited to monthly or periodic statements for all credit cards and debit cards in the name of defendant alone or with any other person or which defendant is authorized to use.

8. Documentation of all IRAs and certificates of deposit and any other vehicles in the name of defendant alone or with another person or funded in whole or in part by defendant since January 22, 2010.

9. Documentation of all the $1,500 monthly payments which defendant previously acknowledged paying or owing to his spouse since January 22, 2010.

10. Copies of all direct deposit advices and similar documents providing for the direct deposit of defendant's salary since January 22, 2010.

11. Copy of payroll check or direct deposit advice from the University of Illinois issued in May 2015.

12. Documentation of disposition of May 2015 payroll check.

13. Documentation of disposition of $7339.64 disbursed from UIECU account on August 17, 2015.

14. Documentation of any revenue of defendant from any source other than the University of Illinois since January 22, 2010.

15. All federal and state income tax returns with all attachments and 1099 forms of respondent filed since January 22, 2010.

16. Documentation of all financial accounts of any nature opened since April 29, 2015.

17. A completed "Income and Assets Form" attached to the citation.

**MAILING, ELECTRONICALLY TRANSMITTING, OR PERSONALLY DELIVERING THE REQUESTED DOCUMENTS AND THE COMPLETED INCOME AND ASSETS FORM TO THE PETITIONERS' ATTORNEY LISTED BELOW ON OR BEFORE NOVEMBER 26, 2015 WILL EXCUSE YOUR PERSONAL APPEARANCE AND NO EXAMINATION WILL BE REQUIRED.**

**If you fail to respond to the citation by not returning copies of the requested documents and the completed Income and Assets Form by November 26, 2015 you must appear in person on December 2, 2015 with the original documents.**

Return documents to:
Frederic M. Grosser
Suite 503, 201 West Springfield Avenue, Champaign, Illinois 61820
(217) 352-2784, fgrosser@ameritech.net

https://secure.jtsmith.com/clerk/yytt331s.asp



# Katie M. Blakeman
## Champaign County Circuit Clerk



| Case LookUp | Name List |
| --- | --- |

[LOGOFF]

## CIVIL CASE LOOKUP FOR CASE #10L 000017

**Respondent**                                    **Petitioner**

                                                  NCNEIL ROSS E

KETCHENS MILORAD P
        0
                                                          0

### Information:

                File Date: 01/22/10
                Court Room: K
          Next Appearance: 03/09/16  09:00
               Jury Trial: YES

                PLAINTIFF: NCNEIL  ROSS E
           PL. ATTORNEY:  GROSSER FREDER
                PLAINTIFF: MCNEIL  LESLIE L
           PL. ATTORNEY:  GROSSER FREDER
               DEFENDANT: KETCHENS  MILORAD P

## FEES & FINES INFORMATION                       **as of 6-22-2016 10:00PM**

| ORDERED | DESCRIPTION | PAID | BALANCE |
| --- | --- | --- | --- |
| 10.00 | AUTOMATION | 10.00 | .00 |
| 5.00 | DOCUMENT STORAGE | 5.00 | .00 |
| 160.00 | CIRCUIT CLERK FEE | 160.00 | .00 |
| 5.00 | COURT FINANCE FEE | 5.00 | .00 |
| 10.00 | LIBRARY FEE | 10.00 | .00 |
| 25.00 | COURT SECURITY | 25.00 | .00 |
| 212.50 | CIRCUIT CLERK FEE | 212.50 | .00 |
| 1.25 | PERSONAL CHECK SERVI | 1.25 | .00 |
| 1.25 | PERSONAL CHECK/CREDI | 1.25 | .00 |
| 10.00 | AUTOMATION | 10.00 | .00 |
| 5.00 | DOCUMENT STORAGE | 5.00 | .00 |
| 60.00 | CIRCUIT CLERK FEE | 60.00 | .00 |
| 5.00 | COURT FINANCE FEE | 5.00 | .00 |
| 10.00 | LIBRARY FEE | 10.00 | .00 |
| 25.00 | COURT SECURITY | 25.00 | .00 |
| 1.00 | COPIES | 1.00 | .00 |
| 1.50 | COPIES | 1.50 | .00 |
| 1.00 | COPIES | 1.00 | .00 |
| 8.50 | COPIES | 8.50 | .00 |
| 6.00 | CERTIFIED COPIES | 6.00 | .00 |
| 1.00 | COPIES | 1.00 | .00 |
| 1.50 | COPIES | 1.50 | .00 |
| 1.00 | COPIES | 1.00 | .00 |
| 9.50 | COPIES | 9.50 | .00 |
| 1.50 | COPIES | 1.50 | .00 |
| 1.25 | PERSONAL CHECK/CREDI | 1.25 | .00 |
| 1.00 | COPIES | 1.00 | .00 |
| 3.00 | COPIES | 3.00 | .00 |
| 2.00 | CERTIFIED COPIES | 2.00 | .00 |
| 1.00 | COPIES | 1.00 | .00 |
| 9.50 | COPIES | 9.50 | .00 |

|           | Plaintiff's Attorney Frederic Grosser |
|-----------|---------------------------------------|
|           | Plaintiffs' Reply to Closing Argument of Defendant on file by Defendant's Attorney Michael Tague |
| 03-30-15  | Admissions that do not Require Proof at Trial on file |
| 03-31-15  | Copies & Certified Copies |
|           | Bench Trial on file |
|           | Bench Trial on file |
| 04-08-15  | Affidavit on file |
|           | Affidavit on file |
| 04-29-15  | Judgment Order entered.  See ORDER. |
|           | On February 24 and 25, 2015, testimony was heard by bench trial in this cause.  The Court allowed Closing Argument and Replies to be provided by the parties.  The Court has now reviewed the written documentation. |
|           | Finding in favor of Plaintiffs and against Defendant for the intentional tort of trespass.  Judgment entered in favor of Plaintiffs in the amount of $2,400 compensatory damages; $240,000 punitive damages and cost of suit. |
|           | The Judgment Order entered this date is emailed to all counsel. |
|           | |
|           | Judgment entered in favor of the Plaintiffs and against the defendant in the total amount of $242,400 plus cost of suit. |
|           | E-mail on file. |
| 04-30-15  | Judgment entered, |
| 05-04-15  | Garnish More Than $5000.00 |
|           | #10 Envelope less than 1 ounce |
|           | Affidavit for wage deduction order on file. |
|           | Wage Deduction Notice on File. |
|           | Wage Deduction Summons on file |
| 05-05-15  | Certificate of Certified mailing prepared. |
| 05-06-15  | Objection to Plaintiffs' Third Request for Production of Documents on File by Defendant's Attorney Michael Tague |
| 05-07-15  | Green Certified Mail receipt(s) on file. |
| 05-11-15  | Green Certified Mail receipt(s) on file. |
| 05-20-15  | Wage Deduction Order entered.  See ORDER.  Copy returned to Attorney GROSSER this date. |
| 05-21-15  | Interrogatories/answer to wage deduction proceedings on file |
| 05-26-15  | Petition for Adjudication of Direct Criminal Contempt on file by Plaintiff's Attorney Frederic Grosser |
|           | Interrogatories/answer to wage deduction proceedings on file |
| 05-27-15  | Letter to all counsel regarding the Petitition for Adjudication of Direct Criminal Contempt. |
|           | Letter to the ARDC regarding the Petition. |
|           | Letter to ARDC Regarding the Petition on file |
| 05-28-15  | Memorandum of Law in Support of Motion for Modification of Judgment or To Vacate Judgment or for Other Relief Pursuant to 735 ILCS 5/2-1203(a) on file by Defendant's Attorney Michael Tague |
|           | Motion for Modification of Judgment or to Vacate Judgment or for Other Relief Pursuant to 735 ILCS5/2-1203(a) on file |
| 05-29-15  | Copies & Certified Copies |
|           | Letter emailed to all counsel advising them of the Court's order. Defendant's Motion for Modification of Judgment is set to be heard June 18, 2015 at 9:00 a.m. in Courtroom K.  The Plaintiffs are to file any materials in opposition to the motion, including a memorandum of law, and deliver a copy to the Court at its chambers, no later than June 8, 2015. |
|           | A failure to comply with the foregoing order by the movant will result in the Court treating the motion as withdrawn.  A failure to comply with the foregoing order by the party against whom the motion is directed will result in the Court granting the motion as confessed. |
|           | E-mail on file. |
|           | Copies & Certified Copies |
|           | Bill of Costs on file |
| 06-02-15  | Copies & Certified Copies |
| 06-05-15  | Modify Within 30 Days of Judgment |
|           | Moiton to Modify Wage Deduction Order ot to Stay Wage Deduction Order On file by Defendant's Attorney Michael Tague |
|           | Objection to Bill of Costs on file by Defendant's Attorney Michael Tague |
| 06-08-15  | Plaintiffs' Response to Motion for Modification of Judgment or to Vacate Judgment or for Other Relief Pursuant to 735 ILCS 5/2-1203 (a) and Defendant's Memorandum on His Motion on file by Plaintiff's Attorney Frederic Grosser |
| 06-16-15  | Motion for Leave to File Reply to Plaintiffs' Response to Motion for Modification of Judgment or to Vacate Judgment or for Other Relief Pursuant to 735 ILCS 5/2-1203(a) and Defendant's Memorandum on His Motion on file by Defendant's Attorney Michael Tague |
| 06-18-15  | Plaintiff Ross McNeil appears with counsel, Attorney FRED GROSSER. |

06/23/2016 02:47 PM

|       | Defendant appears personally with counsel, Attorney MICHAEL TAGUE.
Cause called for hearing on Defendant's Motion for Modification of
Judgment or to Vacate Judgment or for Other Relief Pursuant to 725
ILCS 5/2-1203(a).
On file and reviewed by the Court is Defendant's motion and memorandum
of law and Plaintiffs' response.
Statements of counsel heard.  Motion for Modification is denied.  No
written order is required. |
|-------|-------|
| 07-17-15 | Notice of Appeal on file by Defendant-Appellant, Milorad P.
Ketchens by Attorney, Michael J. Tague.
Motion for Extension of Time to File Appeal Bond or Alternate
Security Pursuant to Supreme Court Rule 305 (c) on file by Defendant,
Milorad P. Ketchens by Attorney Michael J. Tague. |
| 07-20-15 | Certificate of mailing prepared.
Defendant's Motion for Extension of Time to File Appeal Bond
or Alternate Security Pursuant to Supreme Court Rule 305(c) is set for
August 6, 2015 at 8:45 a.m. in Courtroom K.  Counsel notified by email
this date. |
| 07-27-15 | Appellate Court's letter to counsel pursuant to
Supreme Court Rule 312 on File. |
| 07-31-15 | Motion for Approval of Alternative Security and Request for Stay of
Enforcement of Money Judgment Pending Appeal Pursuant to Supreme Court
Rule 305(a) on file by Defendant's Attorney Michael Tague
Copy of Transcript (6/18/15) on file
On file
Copy of Transcript (11/1/11) placed on file
Notice of Filing on file. |
| 08-03-15 | Request from attorney to prepare the appeal record on file.
Appellate Court Docketing Order on File. |
| 08-06-15 | Plaintiff Ross McNeil appears personally with counsel, Attorney
FREDERIC GROSSER.  Defendant appears by counsel, Attorney MICHAEL
TAGUE.
Cause called for hearing on Defendant's Motion for Extension of Time
to File Appeal Bond or Alternate Security Pursuant to Supreme Court
Rule 305(c) and Motion for Approval of Alternative Security and
Request for Stay of Enforcement of Money Judgment Pending Appeal
Pursuant to Supreme Court Rule 305(a).  Plaintiffs' Exhibit 11 and 12
placed on file this date.
Court has considered all the documentation presented and the
representations of counsel.
Defendant's Motion for Approval of Alternative Security and Request
for Stay of Enforcement of Money Judgment Pending Appeal is denied.
Court will allow Defendants more time to obtain appeal bond.
Defendants are given until the end of the business day of September 1,
2015 to file the $266,000 appeal bond.
Plaintiff's request for citation hearing is allowed.  Citation is to
issue returnable September 2, 2015 at 9:00 a.m. in Courtroom K. |
| 08-13-15 | Garnish More Than $5000.00
Citation notice on file. |
| 08-14-15 | Garnish More Than $5000.00
Garnish More Than $5000.00
Proof(s) of service on file. |
| 08-18-15 | Appeal prepared for appellate court this date. |
| 08-20-15 | Letter notifying attorney of appeal fees created and mailed.
Certificate of mailing prepared.
Copies & Certified Copies |
| 08-21-15 | Notice of Filing on file.
Motion for Approval of Alternative Security and Request for Stay of
Enforcement of the Money Judgment Pending Appeal Pursuant to Supreme
Court Rule 304(A) on file |
| 08-26-15 | Appeal Over 200 Pg $.25 Page
Citation and Certification on file
Proof(s) of service on file. |
| 09-02-15 | Plaintiff Ross McNeil appears personally with counsel, Attorney
FREDERIC M. GROSSER.  No appearance of the Defendant.  Appearance of
Attorney MICHAEL TAGUE on behalf of Defendant.  Cause called for
citation hearing.  Representations of counsel heard.  Cause is
continued for further proceedings on citation hearing to October 28,
2015 at 9:00 a.m. in Courtroom K. |
| 09-10-15 | ALIAS CITATION
Citation and Certification, not served, on file. |
| 09-11-15 | Defendant's Objections to Fourth Request for Production of Documents
On file by Defendant, by Attorney, Michael J. Tague. |
| 09-18-15 | Record of Appeal, 4-15-0578, mailed this date
Certificate of Certified mailing prepared. |
| 09-25-15 | Receipt from the Appellate Court.
Receipt from the Appellate Court that common law record received from
the circuit court on file.  Appellate Court No. 4-15-0578 |
| 09-30-15 | Appeal deliver costs |

| | |
|---|---|
| 10-06-15 | ALIAS CITATION |
| 10-28-15 | Appearance of Plaintiff Ross McNeil personally with counsel, Attorney FREDERIC M. GROSSER.  No appearance of Defendant nor anyone on Defendant's behalf. |
| | Representations of counsel heard.  Cause is continued for hearing on any post-judgment pleadings to November 12, 2015 at 8:45 a.m. in Courtroom K.  Plaintiff to send Notice of Hearing indicating that Defendant's counsel and Defendant are to be present at that hearing. |
| | Cause is continued for further proceedings on Citation to December 2, 2015 at 9:00 a.m. in Courtroom K. |
| | Cause is continued for further proceedings on Citation to December 2, 2015 at 9:00 a.m. in Courtroom K. |
| | Cause allotted for hearing on |
| | Alias Citation and Certification not served. |
| | Motion to Compel Deposition on file by Plaintiff's Attorney Frederic Grosser |
| | Notice of Hearing and Notice to Appear at Hearing on file |
| 10-29-15 | ALIAS CITATION |
| | ALIAS CITATION |
| | Supplementary Notice of Hearing and Notice to Appear at Hearing On file |
| | Motion to Reconsider Court's Order of December 2, 2015 on file by University of Illinois Employees Credit Union, Third Party Creditor, by their Attorney, Donald R. Parkinson |
| 11-09-15 | Record of exhibits received on file. |
| | Receipt Of Exhibits prepared and mailed. |
| | Record of exhibits sent to appeal on file. |
| 11-12-15 | Plaintiffs appear personally with counsel, Attorney FREDERIC GROSSER.  Defendant appears with counsel, Attorney MICHAEL TAGUE. |
| | Citation is served upon the Defendant in open court this date by Attorney Grosser. |
| | Cause called for hearing on Plaintiffs' Motion to Compel Deposition and further proceedings on Citation. |
| | Motion for Substitution of Judge as of Right placed on file this date by Attorney Tague.  Motion is denied. |
| | Representations of counsel heard. |
| | Defendant is ordered to provide to Mr. Grosser the requested information no later than December 1, 2015. |
| | Cause is continued for Citation hearing on December 17, 2015 at 9:00 a.m. in Courtroom K.  Defendant is ordered to appear on that date and time unless Mr. Grosser excuses his appearance on that date. |
| | Defendant is admonished as to proceedings in absentia. |
| | The hearing date of December 2, 2015 is vacated. |
| | Affidavit of Service of Citation on file |
| | Motion for Substitution of Judge as of Right on file by Counsel for Defendants. |
| 11-13-15 | Enforcement Motion for Judgment Against University of Illinois Employees Credit Union on file  by Plaintiff's Attorney Frederic Grosser |
| 11-16-15 | Plaintiffs' Enforcement Motion for Judgment Against University of Illinois Employees Credit Union will be heard on December 17, 2015 at 11:00 a.m. in Courtroom K.  Plaintiffs to give notice.  Plaintiffs are to provide a memorandum of law to the Court at its chambers no later than November 30, 2015. |
| | ALIAS CITATION |
| 11-17-15 | Notice of Hearing and Notice to Appear at Hearing and Notice to Produce Documents at Hearing on file |
| 11-18-15 | Motion to Continue on file by Respondent's Attorney Donald Parkinson |
| | Re. 4-15-0578, Mandate from the Appellate Court |
| | Appellant's motion to supplement the record on appeal ALLOWED. |
| 11-23-15 | Copies & Certified Copies |
| | Plaintiffs' Enforcement Motion for Judgment Against University of Illinois Employees Credit Union will be heard on December 2, 2015 at 10:00 a.m. in Courtroom K.  The prior hearing date of December 17, 2015 at 11:00 a.m. is vacated.  Notice of Hearing and Notice to Appear and Notice to Produce Documents will stand with the new hearing date.  Copy of this docket entry emailed to all counsel this date. |
| 11-30-15 | Plaintiffs' Memorandum on Enforcement Motion for Judgment Against University of Illinois Employees Credit Union on file by Plaintiff's Attorney Frederic Grosser |
| 12-02-15 | Plaintiff Ross McNeil appears personally with counsel, Attorney FRED GROSSER.  Defendant appears personally with counsel, Attorney MICHAEL TAGUE.  Appearance of Attorney DONALD PARKINSON on behalf of the University of Illinois Employees Credit Union. |
| | Cause called for hearing on Plaintiffs' Enforcement Motion for Judgment against University of Illinois Employees Credit Union. |
| | Parties stipulate as to the evidence.  Arguments of counsel heard. |

|  | Motion is granted.  Judgment entered in favor of Plaintiffs and against the University of Illinois Employees Credit Union in the amount of $29,354.07. |
| 12-11-15 | Notice to Appear at Hearing and Notice to Produce Documents at Hearing on file |
| 12-16-15 | Motion to Quash and objections to Rule 237 Notice to Produce Documents at Hearing on file by Defendant's Attorney Michael Tague List of Exemptions Claimed in Response to Citation to Discover Assets and Submission of Legal Authorities on file by Defendant's Attorney, Michael Tague |
| 12-17-15 | Plaintiff ROSS McNEIL appears personally with counsel, Attorney FREDERIC GROSSER. Defendant appears personally with counsel, Attorney MICHAEL TAGUE. Cause called for Citation hearing to Discover Assets. Witnesses sworn.  Evidence heard. Arguments of counsel heard. Motion to Quash Supreme Court Rule 237 Production is allowed. Defendant's wages after garnishment are no longer frozen at the University of Illinois Employees Credit Union pursuant to 735 ILCS 5/2-1402(K-5).  Documents ordered to be produced in the Citation are to be provided to counsel for the Plaintiff at his office no later than the close of business December 31, 2015.  Documents previously produced pursuant to the Citation do not have to be duplicated. Written Order to be prepared by counsel for Defendant pursuant to redaction of sensitive matters and as to the unfreezing of wages pursuant to 2-1402(K-5). Cause is continued for further proceedings on Citation to January 26, 2016 at 9:00 a.m. in Courtroom K.  Citation remains in full force and effect. |
| 12-18-15 | ALIAS CITATION |
| 01-06-16 | Garnish More Than $5000.00 Garnish More Than $5000.00 |
| 01-12-16 | Letter to all counsel advising them of the Court's order. The motion of the University of Illinois Employees Credit Union to Reconsider Court's Order of December 2, 2015 is set to be heard March 9, 2016 at 9:00 a.m. in Courtroom K.  The Plaintiffs are to file any materials in opposition to the motion, including a memorandum of law, and deliver a copy to the Court at its chambers, no later than January 26, 2016.  The UIECU is to file any reply and deliver a copy to the Court at its chambers, no later than February 8 2016. A failure to comply with the foregoing order by the movant will result in the Court treating the motion as withdrawn.  A failure to comply with the foregoing order by the party against whom the motion is directed will result in the Court granting the motion as confessed. Correspondence to Counsel from Court on file. |
| 01-22-16 | ALIAS CITATION Motion to Authorize Production of Additional Documents Under Citation to Defendant on file by Plaintiff's Attorney Frederic Grosser Motion to Compel Milorad P. Ketchens to Produce Documents and for Sanctions on file by Plaintiff's Attorney Frederic Grosser |
| 01-25-16 | Plaintiffs' Memorandum on Motion to Reconsider Court's Order December 2, 2015 on file by Plaintiff's Attorney Frederic Grosser |
| 01-26-16 | Appearance of Plaintiff Ross McNeil personally and with counsel, FREDERIC GROSSER.  Defendant appears personally with counsel, Attorney MICHAEL TAGUE. Cause called for hearing for further proceedings on Citation. Witness sworn.  Evidence heard. Defendant is ordered to not dispose of and to keep in current condition the 2008 Mercedes, the 1993 Volvo, the 2001 Caravan, and the 1980 BMW.  Defendant is further ordered to pay to the Plaintiffs beginning February 1, 2016, $733.90 and every month after that.  Cause is continued for further proceedings on the Citation and for hearing on Defendant's motions filed January 22, 2016 to February 23, 2016 at 9:00 a.m. in Courtroom K. Record of Exhibits Received on file. Clerk's front office cabinet. |
| 02-02-16 | Reply to Plaintiffs' Memorandum Mailed January 25, 2016 on file by Respondent/Third Party Creditor's Attorney Donald Parkinson Objection to Setting of February 23, 2016 at 9 am on file by Respondent the University of Illinois Employees Credit Union's Attorney Donald Parkinson Objection to Motion by Plaintiffs to Extend Citation Proceedings on File by Respondent/ Third Party Creditor's Attorney Donald Parkinson |
| 02-05-16 | Garnish More Than $5000.00 |
| 02-08-16 | Objection to Setting on February 23, 2016 at 9 AM is to be heard February 11, 2016 at 9:00 a.m. in Courtroom K.  Mr. Parkinson to give notice. Garnish More Than $5000.00 |

| | |
|---|---|
| 02-09-16 | Citations hearings are scheduled for March 9, 2016 at 9:30 a.m. in Courtroom K. |
| | Garnish More Than $5000.00 |
| | Garnish More Than $5000.00 |
| | Garnish More Than $5000.00 |
| 02-11-16 | Appearance of Plaintiff Ross McNeil personally and with counsel, FREDERIC GROSSER. Appearance of Attorney DONALD PARKINSON on behalf of Respondent/Third Party Creditor, the University of Illinois Employees Credit Union. |
| | Cause called for hearing on Plaintiffs' Motion to Extend Citation on University of Illinois Employees Credit Union. Arguments of counsel heard. Motion is denied. |
| | Notice on file. |
| 02-17-16 | Supplement to Motion to Authorize Production of Additional Documents Under Citation to Defendant on file by Plaintiffs' Attorney, Frederic Grosser |
| | Objection to Additional Document Request as Supplemental Production Request to Citation of August 13, 2015 on file by Respondent/Third Party Creditor, the University of Illinois Community Credit Union, by Attorney, Donald Parkinson |
| 02-22-16 | Notice of Hearing filed |
| | Interrogatories/answer to wage deduction proceedings on file |
| | Third Party Respondent Answer to Citation Proceedings on file |
| 02-23-16 | Appearance of Ross McNeil personally and by counsel, Attorney FREDERIC GROSSER. Defendant appears personally and with counsel, Attorney MICHAEL TAGUE. |
| | Cause called for further hearing on Citation proceedings. |
| | Arguments of counsel heard. |
| | Defendant is to file an Affidavit showing the responses to the Citation are complete and that no other documentation exists or that is beyond his control to obtain. |
| | The Defendant is to personally pay all of the living expenses for him and his wife and to provide receipts listing those living expenses to the Court. Defendant is to provide receipts for all the living expenses for the past six months that are available to him. Defendant is to present a list of exemptions claimed and the statutory authority with citations that Defendant can take those exemptions. The expenses are to be provided to the Court no later than 8:00 a.m. on Monday, March 7, 2016. The exemption list is to be provided to the Court no later than seven days prior to the hearing date of March 9, 2016. Prior orders are to remain in full force and effect. |
| | Plaintiff is to provide to the Court a list of Defendant's apparent statutory exemptions from the testimony provided and the amounts no later than seven days prior to the hearing date of March 9, 2016. Parties are advised that until there is some motion that Defendant has dissipated assets or there is a motion to vacate fraudulent transfers, any proceedings for Defendant seeking information as to his wife's assets through a citation on the Defendant is inappropriate. |
| | Motion to Quash Third Party Citation on file by Defendant's Attorney Michael Tague |
| | Motion to Reconsider Payment Order Entered January 26, 2016 for the Payment of $733.90 Per Month on file by Defendant's Attorney Michael Tague |
| | Response to Motion to Compel Milorad P. Ketchens to Produce Documents and for Sanctions on file by Defendant's Attorney Michael Tague |
| 03-01-16 | Motion to Quash Third Party Citation on file by Defendant's Attorney Michael Tague |
| | Motion to Quash Third Party Citation on file by Defendant's Attorney Michael Tague |
| | Motion to Quash Third Party Citation on file by Defendant's Attorney Michael Tague |
| | Plaintiffs' List of Potential Exemptions on file by Plaintiff's Attorney Frederic Grosser |
| 03-02-16 | Revised and Updated List of Exemptions Claimed in Response to Citation to Discover Assets and Submission of Legal Authorities on file by Defendant's Attorney Michael Tague |
| 03-07-16 | ALIAS CITATION |
| | Proof(s) of service on file. |
| | Proof(s) of service on file. |
| | Affidavit of Service of Citation on file |
| | Affidavit of Service of Citation on file |
| 03-08-16 | Voluntary Petition for Individuals Filing for Bankruptcy on file. |
| | *** CORRECTED DOCKET ENTRY *** |
| | Voluntary Petition for Individuals Filing for Bankruptcy contained an incorrect file stamp date. |
| | Affidavit of Service of Citation on file |
| | Proof(s) of service on file. |
| | Affidavit of Service of Citation on file |

|            | Proof(s) of service on file. |
|            | Affidavit of Service of Citation on file |
|            | Proof(s) of service on file. |
|            | Affidavit of Service of Citation on file |
|            | Proof(s) of service on file. |
|            | Affidavit of Service of Citation on file |
| 03-09-16   | Plaintiff Ross McNeill appears personally with counsel, Attorney |
|            | FREDERIC M. GROSSER.  Defendant does not appear.  Appearance of |
|            | Attorney MICHAEL TAGUE on behalf of Defendant.  Appearance of Attorney |
|            | DONALD PARKINSON on behalf of Respondent/Third Party Creditor, the |
|            | University of Illinois Employees Credit Union.  Two representatives of |
|            | the University of Illinois Employees Credit Union appear. |
|            | Cause called for hearing on the Motion of the University of Illinois |
|            | Employees Credit Union to Reconsider the Court's Order of December 2, |
|            | 2015.   Court has reviewed all the documentation provided and |
|            | considered the arguments of counsel this date.  The Motion to |
|            | Reconsider is denied. |
|            | Representation to the Court that the Defendant has filed for |
|            | bankruptcy.  Court is provided with a Voluntary Petition for |
|            | Individuals Filing for Bankruptcy by Plaintiff and placed on file this |
|            | date.  Proceedings are stayed pending the filing of bankruptcy. |
|            | Appellate Court Order RE: 4-15-0578 on file. |
|            | Appellate Court Order RE: 4-15-0578 on file. |
|            | Voluntary Petition for Individuals Filing for Bankruptcy on file. |
| 03-16-16   | Circuit Clerk's Office Received the Following Transcripts: |
|            | January 26, 2016, JBF, Laura B. Workman |
| 03-21-16   | Re. 4-15-0578 Mandate from the Appellate Court |
|            | Appellee's Motion to Supplement the Record on Appeal ALLOWED. |
| 04-08-16   | Certificate of service on file. |
| 04-11-16   | Certificate of Service placed on file indicating |
|            | Receipt and payment from UICCU to Attorney Frederic Grosser dated |
|            | April 7, 2016 placed on file. |
| 04-22-16   | Re. 4-15-0578, Mandate from the Appellate Court |
|            | Appellee's motion to supplement the record on appeal ALLOWED. |
| 04-25-16   | Satisfaction of Judgment Order Entered on December 2, 2015, |
|            | Against University of Illinois Employees Credit Union entered.  See |
|            | ORDER. |

---

The PASS system is intended to be a summary of information for the public. It does not take the place of the legal information that is held in the actual Court file. The Clerk of the Circuit Court of Champaign County accepts no liability for discrepancies between these electronic versions and the official printed documents.

---

[ Case LookUp ]    [ Name List ]                                    [ LOGOFF ]

<u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, certifies that on June 27, 2016, the foregoing Complaint to Determine the Dischargeability of a Debt Under 11 USC § 1328(a)(4) is being filed electronically with the Clerk of the Court using the CM/ECF system which will send electronic notification of such filing to the following:


Brett Kepley
Daniel C. Lanterman
Trustee Marsha L. Combs-Skinner
U.S. Trustee



　　　／s/ Frederic M. Grosser
Frederic M. Grosser




Frederic M. Grosser
Suite 503
201 West Springfield Avenue
Champaign, Illinois 61820
(217) 352-2784
fgrosser@ameritech.net